IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RECEIVED

NOV 22 2010

AT 8:30_____ M
WILLIAM T. WALSH
CLERK

UNITED STATES OF AMERICA, and
STATE OF NEW JERSEY,

           Plaintiffs,

    v.

MIDDLESEX COUNTY UTILITIES
AUTHORITY, NERC MIDDLESEX GAS
CO., LLC and MIDDLESEX
GENERATING CO., LLC,

           Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

10-4058 (MLC)

Civil Action No. [_____]

CONSENT DECREE

        The United States of America, on behalf of the United States Environmental

Protection Agency ("EPA"), and the State of New Jersey ("New Jersey" or the "State"), on

behalf of the New Jersey Department of Environmental Protection ("NJDEP"), collectively

referred to herein as "Plaintiffs," filed a Complaint in this action concurrently with this Consent

Decree, alleging that Defendants Middlesex County Utilities Authority ("MCUA"), NERC

Middlesex Gas Co., LLC ("NERC"), and Middlesex Generating Co., LLC ("MGC"), collectively

referred to herein as "Defendants," violated Sections 111, 112, 114 and 502 of the Clean Air Act

("Act"), 42 U.S.C. §§ 7411, 7412, 7414 and 7661a; and Sections 9 and 19 of the New Jersey Air

Pollution Control Act ("Air Pollution Control Act"), N.J.S.A. 26:2C 9 and 19.

        The Complaint against Defendants alleges that they are or were an owner or

operator of the active Middlesex County landfill (the "Middlesex County Landfill" or "MCL"), a

municipal solid waste landfill which includes a gas collection and control system ("GCCS"), on

#3228522.02

Edgeboro Road in East Brunswick, New Jersey. The Complaint also alleges that Defendants and the MCL are and were subject to the Act and regulations promulgated by EPA pursuant to the Act for municipal solid waste landfills; and the Air Pollution Control Act and regulations promulgated by the State through the NJDEP, which were approved into the New Jersey State Implementation Plan by EPA. The Complaint further alleges that Defendants failed to comply with the Act and the Air Pollution Control Act and their implementing regulations by failing to monitor or improperly monitoring air emissions from the MCL, failing to comply with operational standards for the MCL, failing to submit required plans, and failing to keep required records and submit required reports. Defendants deny the allegations set forth in the Complaint. In addition, the Parties agree that nothing in the Complaint or this Consent Decree shall be construed to be a determination by EPA or NJDEP that the Middlesex County Landfill and the Edgeboro Landfill are or are not a single source of air emissions or that they are or are not a single landfill.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action, and over the parties, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113 of the Act, 42 U.S.C. § 7413. Venue lies in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7613(b), and 28

U.S.C. §§ 1391(b) and (c) and 1395(a), because the violations alleged in the Complaint occurred in, and Defendants conduct business in, this judicial district. Defendants consent to the Court's jurisdiction over this Decree and any such action to enforce this Decree. Defendants consent to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Section 113 of the Act, 42 U.S.C. § 7413.

## II. APPLICABILITY

3.      Except as provided in Paragraph 5 of this Consent Decree, the obligations of this Consent Decree apply to and are binding upon the United States, New Jersey, and upon Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

4.      On August 17, 2007, Defendants MGC and NERC transferred all ownership interests in the MCL GCCS to Defendant MCUA. On August 17, 2007, MGC and NERC ceased all operating activities at the MCL, including with respect to the GCCS, and ceased to have any ownership interest in any part of the MCL.

5.      Consistent with Paragraphs 3 and 4 of this Consent Decree, the Compliance Requirements set forth in Section V of this Decree, the Reporting Requirements set forth in Section VI of this Decree, and the Stipulated Penalty provisions set forth in Section VII of this Decree (except the stipulated penalty provision of this Decree pertaining to late payment of the civil penalty) shall be applicable to only Defendant MCUA. It is the intention of all parties to this Decree that MCUA be solely responsible for all prospective implementation of and compliance with all operational, monitoring, recordkeeping and reporting requirements applicable to the MCL, as set forth in the Act and regulations promulgated pursuant to the Act, and Sections V and VI of this Decree.

3

6.    The Civil Penalty provisions in Section IV of this Consent Decree, and the Stipulated Penalty provisions of this Decree pertaining to late payment of the civil penalty, shall be applicable to all Defendants.

7.    No transfer of ownership or operation of the MCL, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant MCUA of its obligation to ensure that the terms of the Consent Decree are implemented.  At least 30 Days prior to such transfer, MCUA shall provide a copy of this Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 2 the United States Department of Justice, and the NJDEP, in accordance with the Notice Section of this Decree.  Any attempt to transfer ownership or operation of the MCL, or any part of the MCL, without complying with this Paragraph, constitutes a violation of this Decree.

8.    Defendant MCUA shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties reasonably include compliance with any provision of this Decree. MCUA shall provide a copy of the relevant portions of the Consent Decree to any contractor retained to install the physical demarcation between the MCL and the Edgeboro Landfill, or to install, calibrate, maintain, operate, or monitor the Treatment System, in accordance with the Compliance Requirements Section of this Decree.  Defendant MCUA shall insure that any such contract requires performance of the work in conformity with the relevant provisions of this Decree.

9.    In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Decree.

## III. DEFINITIONS

10.     Terms used in this Consent Decree that are defined in the Act, the Air Pollution Control Act, or in regulations promulgated pursuant to the Act or the Air Pollution Control Act shall have the meanings assigned to them in the Act, the Air Pollution Control Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Decree, the following definitions shall apply:

        a.     "Complaint" shall mean the Complaint filed by the United States and New Jersey in this action.

        b.     "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto.

        c.     "Date of Lodging" shall be the date upon which this Consent Decree is filed with the Court as part of a Notice of Lodging, as recorded on the Court's docket, and shall precede both the public comment period required by this Decree and a Motion to Enter the Decree.

        d.     "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

        e.     "Defendants" shall mean the Middlesex County Utilities Authority, ("MCUA"), NERC Middlesex Gas Co., LLC ("NERC"), and Middlesex Generating Co., LLC ("MGC").

        f.     "Edgeboro Landfill" shall mean a facility, owned by Edgeboro, Inc., located at Edgeboro Road in East Brunswick, New Jersey.

g.     "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

h.     "Effective Date" shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Decree is granted, whichever occurs first, as recorded on the Court's docket.

i.     "Gas Collection and Control System" or "GCCS" shall mean the entire system (excluding any interim collection devices) installed at the Middlesex County Landfill to collect and control landfill gas, currently owned and operated by Defendant MCUA.

j.     "GCCS Well" or "Well" shall mean any type of gas collection device used in the MCL GCCS.

k.     "Malfunction" shall mean any sudden, infrequent, and not reasonably preventable failure of air pollution control equipment (including monitoring equipment), process equipment, or a process to operate in a normal or usual manner.  Failures that are caused in part by poor maintenance or careless operation are not malfunctions.

l.     "Middlesex County Landfill" or "MCL" shall mean a solid waste landfill, which receives municipal solid waste and includes the GCCS, located at Edgeboro Road in East Brunswick, New Jersey, and currently owned and operated by Defendant MCUA.

m.     "New Jersey" or "State" shall mean the State of New Jersey, acting on behalf of the New Jersey Department of Environmental Protection.

n.     "NJDEP" shall mean the New Jersey Department of Environmental Protection and any of its successor departments or agencies.

o.     "Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral.

6

p.      "Parties" shall mean the United States, New Jersey, and Defendants.

q.      "Plaintiffs" shall mean the United States and the State of New Jersey.

r.      "Section" shall mean a portion of this Consent Decree identified by a title and roman numeral.

s.      "Shutdown" shall mean the cessation of operation of an affected facility (as defined in 40 C.F.R. § 60.2), for any purpose.

t.      "Startup" shall mean the setting in operation of an affected facility (as defined in 40 C.F.R. § 60.2), for any purpose.

u.      "Treatment System" shall mean a system that has an absolute filtration rating of 10 microns or less, lowers the water dew point of the landfill gas by at least 20 degrees Fahrenheit through a de-watering process (except as specifically provided in Paragraph 16.k. of this Consent Decree), and compresses the landfill gas.

v.      "Treated landfill gas" shall mean landfill gas that is treated by a Treatment System in accordance with Paragraph 16.k. of this Consent Decree.

## IV. CIVIL PENALTY

11.     Within fifteen (15) business days after the Defendants receive notice that this Consent Decree has been lodged, Defendants shall deposit the amount of $1,330,150 into an escrow account bearing interest on commercially reasonable terms, in a federally-chartered bank (the "Escrow Account").  Such monies shall remain in escrow until entry of the Decree.  If the Decree is not entered by the Court, and the time for any appeal of that decision has run, or if the Court's denial of entry is upheld on appeal, the monies placed in escrow, together with accrued interest thereon, shall be returned to the Defendants.  If the Decree is entered by the Court, Defendant shall, within fifteen (15) business days after Defendants receive notice thereof, cause the monies (including all accrued interest) in the Escrow Account to be released and disbursed in

7

equal parts to the United States and New Jersey in payment of the civil penalty under this Decree.

12.     Defendants shall pay the civil penalty due to the United States, plus any accrued interest, by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice Financial Litigation Unit of the U.S. Attorney's Office for the District of New Jersey, in accordance with written EFT instructions to be provided by the United States to Defendants following lodging of the Consent Decree.  At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Decree in this case, and shall reference the civil action number and DOJ case number 90-5-2-1-09328, to the United States in accordance with the Notice Section of this Decree, by email to acctsreceivable.CINWD@epa.gov, and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio  45268

13.     The Defendants shall pay the civil penalty due to the State of New Jersey, plus any accrued interest, by check made payable to "Treasurer, State of New Jersey" and remit to:

> Administrator, Air Compliance & Enforcement
> New Jersey Department of Environmental Protection
> P.O. Box 422
> Trenton, New Jersey  08625-0422

14.     Defendants shall not deduct any penalties paid under this Consent Decree pursuant to this Section or the Stipulated Penalties Section in calculating their Federal or State income tax.

## V.  COMPLIANCE REQUIREMENTS

15.     Defendant MCUA shall comply with all permits issued for the MCL pursuant to the Act, N.J.A.C. 7:27 8.1 *et seq,*. and N.J.A.C. 7:27 22.3 *et seq.*, and with the interim alternative

monitoring plan for Cells 7, 8 and 9 of the MCL (Alternative Monitoring Plan), approved by EPA on July 13, 2010 and attached to this Consent Decree as Attachment A; and with all applicable requirements in the following regulations:

      a.    "New Source Performance Standards for Municipal Solid Waste Landfills," 40 C.F.R. Part 60, Subpart WWW, 40 C.F.R. §§ 60.750—60.759 ("Landfill NSPS"); and

      b.    "National Emission Standards for Hazardous Air Pollutants:  Municipal Solid Waste Landfills," 40 C.F.R. Part 63, Subpart AAAA; 40 C.F.R. §§ 63.1930—63.1990 ("Landfill MACT").

      c.    Defendant MCUA shall apply for and take all necessary action to obtain a modification to its Title V operating permit to incorporate the Alternative Monitoring Plan referred to in this Paragraph into such permit.

16.    <u>Specific Compliance Requirements</u>.  In addition to the applicable compliance requirements set forth in Paragraph 15 of this Section, Defendant MCUA shall comply with the following specific requirements, which, if not implemented prior to the Effective Date of this Consent Decree, shall be implemented no later than thirty (30) days from the Effective Date of the Consent Decree, or by the date set forth in the specific subparagraph of this Section:

      a.    Defendant MCUA shall operate and maintain the nineteen (19) new gas collection wells, which are designated Wells AW-67 through AW-85, in accordance with all applicable requirements in the Landfill NSPS and MACT or any alternatives approved by EPA. Wells AW-67 through AW-85 were installed prior to the Effective Date of this Decree pursuant to EPA's September 17, 2007 conditional approval of a revised GCCS design plan submitted by Defendant NERC.

b.      Defendant MCUA shall comply with the provisions in 40 C.F.R. § 60.755(b) (regarding installation of GCCS wells), 40 C.F.R. § 60.757(f)(6) (regarding annual reporting of new wells or GCCS expansions), 40 C.F.R. § 60.758(d) (regarding keeping up to date plot maps and records of existing and planned collectors), and 40 C.F.R. § 60.753(b)(3) (regarding EPA approval for decommissioning wells).

i.      Defendant MCUA may replace any non-performing GCCS Well with a newly installed and adjacent GCCS Well upon written notice to EPA and NJDEP and without further approval.  For purposes of this subparagraph, a "non-performing GCCS Well" is any gas collection well at the MCL that consistently exceeds one or more applicable operational or performance standards of the Landfill NSPS and MACT, or any EPA-approved alternative operational or performance standards, such that continuous compliance with those standards cannot be assured.  For purposes of this subparagraph, a newly installed GCCS Well is "adjacent" to a non-performing GCCS Well if it is located such that it has a radius of influence that covers at least 90 percent of the radius of influence of the non-performing GCCS Well.

ii.      Defendant MCUA shall submit a written request to EPA in accordance with Section XIII of this Consent Decree to decommission non-performing GCCS Wells, in accordance with 40 C.F.R. § 60.753(b)(3).  Defendant MCUA shall continue to monitor the non-performing GCCS Well until EPA issues approval to decommission the Well.  Provided that the adjacent replacement GCCS Well is operational and is in compliance with all applicable requirements in the Landfill NSPS and MACT, from the time a written request to decommission is made until EPA issues an approval to decommission, the applicable operational standards in the Landfill NSPS and MACT will be deemed to be satisfied with respect to the corresponding non-performing GCCS Well during that time.

      c.     If Defendant MCUA intends to modify the MCL's GCCS in any way not covered under subparagraph 16.b. of this Section, above, it shall submit a modification to the GCCS design plan to EPA for approval, in accordance with Section XIII of this Consent Decree, which provides a detailed description of the proposed modification, and shall also seek to modify its Title V permit in accordance with the requirements in 40 C.F.R. Part 70 and N.J.A.C. 7:27-22 et seq.

      d.     Except as may be provided for in the Alternative Monitoring Plan, Defendant MCUA shall conduct quarterly monitoring of methane concentrations at the surface of the MCL in accordance with the requirements in the Landfill NSPS and MACT (40 C.F.R. §§ 60.753(d) and 60.755(c)), including, but not limited to, along the entire perimeter of the MCL that shall be physically demarcated under subparagraph 16.h. of this Section, and where visual observations indicate elevated concentrations of landfill gas such as distressed vegetation and cracks or seeps in the cover.

      e.     Except as may be provided for in the Alternative Monitoring Plan, Defendant MCUA shall take appropriate corrective action for each monitored exceedance as required under the Landfill NSPS and MACT.  A monitored exceedance shall mean any surface methane reading of 500 parts per million by volume or more above background at any surface location monitored pursuant to subparagraph 16.d of this Section, as provided in the Landfill NSPS and MACT.

      f.     Except as may be provided for in the Alternative Monitoring Plan, Defendant MCUA shall keep complete records (written or electronic) of the surface monitoring required by subparagraph 16.d. of this Section, and of any corrective action(s) taken under subparagraph 16.e. of this Section.  To be deemed complete, the records shall at a minimum

include:  the date that each exceedance was first monitored, the location of each monitored exceedance, the monitored methane concentration, a description of all corrective action(s) taken to address each exceedance, including the date(s) such corrective action is initiated, the date(s) the location of the exceedance is re-monitored, and the re-monitored methane concentration(s).

g.      Defendant MCUA shall implement a program to monitor, on a monthly basis, the integrity of the MCL cover, and shall implement landfill cover repairs as necessary, as provided in 40 C.F.R. § 60.755(c)(5).

h.      Defendant MCUA shall ensure that a physical demarcation of the boundary of the Middlesex County Landfill and the Edgeboro Landfill is installed and maintained at all times, except in areas of the MCL where there is active landfill construction or expansion activities and then with minimal disruption of the physical demarcation.  In addition to routine maintenance, Defendant MCUA shall fully inspect the physical demarcation on a quarterly basis and promptly repair or replace markers.  Quarterly inspections will be conducted within two (2) weeks prior to the scheduled quarterly surface methane monitoring events described in subparagraph 16.d. of this Section.

In order to comply with this subparagraph, physical markers must be securely placed along the boundary of the MCL and the Edgeboro Landfill at maximum intervals of 100 feet.  Each physical marker must extend vertically at least four (4) feet from the landfill surface, such that surface scanning technicians performing activities pursuant to subparagraphs 16.d. and e. of this Section and other landfill personnel can visually identify such boundary.  To comply with this subparagraph, MCUA may place offset markers along the roadway around cells 7 and 9, where the roadway and the boundary are coincident, provided the offset markers clearly identify the distance from and direction to the actual boundary.

12

Installation of the physical demarcation shall be completed on or before September 1, 2010. Defendant MCUA shall give the owner of the Edgeboro Landfill (Edgeboro, Inc.) notice that the physical demarcation is complete within ten (10) days of installation.

Defendant MCUA shall apply for and take all necessary action to obtain a modification to its Title V operating permit to incorporate the requirements in subparagraph 16.h. of this Section into such permit.

i.      Defendant MCUA shall ensure that the impermeable liner is completely installed for Cells 7, 8 and 9 no later than September 1, 2010. For purposes of the September 1, 2010 installation deadline established by this subparagraph, the default of a contractor or subcontractor may be a force majeure event under Section VIII of this Consent Decree.

j.      Defendant MCUA shall submit written notice to EPA and NJDEP of the completion of the installation of the impermeable liner required by subparagraph 16.i. of this Section, within five (5) business days of such completion, in accordance with the Section XIII of this Consent Decree.

k.      Beginning on the date when Defendant MCUA receives notice of the Date of Lodging, Defendant MCUA shall ensure that all landfill gas collected by its GCCS is treated by a Treatment System, as defined in Section III of this Consent Decree, prior to the landfill gas entering the pipe that transports it to Defendant MCUA's off-site gas-to-energy facility in Sayreville, New Jersey, or to any other facility approved by EPA and/or NJDEP to accept MCUA landfill gas. The Treatment System shall be operated such that the temperature of the treated landfill gas remains greater than 32 degrees Fahrenheit. Therefore, it shall not be a violation of this Consent Decree if the de-watering process lowers the water dew point of the landfill gas by less than 20 degrees Fahrenheit if necessary to maintain the treated landfill gas

13

temperature at greater than 32 degrees Fahrenheit, and provided that the de-watering process lowers the water dew point of the landfill gas such that the system effectively treats the landfill gas.

    i.    Consistent with 40 C.F.R. § 60.755(e) of the Landfill NSPS, the requirements in subparagraph 16.k. of this Section shall apply at all times, except during periods of Startup, Shutdown (including for routine maintenance), and Malfunction of the Treatment System, provided that the duration of any Startup, Shutdown or Malfunction shall not exceed one (1) hour.  For purposes of subparagraph 16.k. of this Section, the duration of any Treatment System Shutdown or Malfunction shall be deemed to be one (1) hour or less if, within one (1) hour of the Shutdown or Malfunction commencement, the flow of all collected landfill gas to the Treatment System is stopped by shutting down the gas mover system, and all valves in the GCCS contributing to venting of such gas to the atmosphere are closed, consistent with 40 C.F.R. §§ 60.753(e) and (f), and 60.755(e).  The applicable Startup, Shutdown and/or Malfunction requirements in 40 C.F.R. §§ 60.7 and 60.11, and 40 C.F.R. § 63.6, including requirements pertaining to monitoring, recordkeeping, reporting and notification, shall apply during all periods of Startup, Shutdown and/or Malfunction of the Treatment System.  Consistent with 40 C.F.R. § 63.6(e)(1)(ii), all Treatment System maintenance and/or repair activities shall be completed, and all Malfunctions shall be corrected, as soon as practicable after their occurrence, provided, however, that all collected landfill gas shall be routed to a control device that complies with 40 C.F.R. § 60.752(b)(2)(iii) within six (6) hours of the commencement of any Startup, Shutdown and/or Malfunction of the Treatment System.

ii.      In addition to the requirements in subparagraph 16.k.i. of this Section, Defendant MCUA shall comply with the provisions of its Startup, Shutdown and Malfunction Plan developed pursuant to the Landfill MACT.

iii.     Defendant MCUA shall apply for and take all necessary action to obtain a modification to its Title V operating permit to incorporate the requirements in subparagraph 16.k. of this Section into such permit.  NJDEP and EPA will use reasonable efforts to consider and process MCUA's complete application for the Title V permit modification.

l.       Within thirty (30) calendar days of receiving notice of the Date of Lodging, and in accordance with Section XIII of this Consent Decree, Defendant MCUA shall submit to EPA and NJDEP the following documentation, which EPA will review and either approve, disapprove, or request additional information:

i.       The manufacturer's written design specifications for the filtration, de-watering and compression equipment comprising the Treatment System at the MCL, which demonstrates conformance to the Treatment System definition in Section III of this Consent Decree, or provides, for EPA's review and approval, justification for operating ranges which may deviate from, but are based upon, the manufacturer's specifications or an engineering analysis.  Deviations that are not based upon the manufacturer's specifications or an engineering analysis will not be approved by EPA.  The specifications or, to the extent manufacturers' specifications do not address the criteria, an engineering analysis shall include, but not be limited to, the minimum pressure drop across the filtration system and the minimum feasible landfill gas temperature reduction across the de-watering system, and such other criteria, parameters and operating ranges determinative of effective operation of the Treatment System; and

           ii.       A schedule or protocol for changing the landfill gas filters in the treatment system.

        Defendant MCUA shall respond to all deficiencies EPA may identify in an engineering analysis submitted pursuant to subparagraph 16.l.i of this Section within thirty (30) days of receiving notice of such deficiencies.

        m.      Starting within thirty (30) days of receiving notice of the Date of Lodging, to demonstrate compliance with 40 C.F.R. § 60.752(b)(2)(iii) of the Landfill NSPS by using a Treatment System, Defendant MCUA shall install, calibrate, maintain and operate, equipment to monitor filtration and de-watering system performance effectively. Measurements of operational parameters shall include volumetric flow rates and pressure to the pipeline; differential pressure across the Treatment System particulate filter; differential temperature (temperature lowering) across the de-watering system; and pressure (vacuum) at blower/compressor. Data for each parameter shall be monitored, but not continuously as required by subparagraph 16.n. of this Section, recorded manually once per day, and maintained consistent with 40 C.F.R. § 60.758 of Landfill NSPS.

        n.      Starting within six (6) months of receiving EPA's approval of the operating parameters submitted pursuant to subparagraph 16.l. of this Section, in order to demonstrate compliance with 40 C.F.R. § 60.752(b)(2)(iii) of the Landfill NSPS by using a Treatment System, Defendant MCUA shall install, calibrate, maintain, and operate according to the approved manufacturer's specifications and/or an engineering analysis, the following equipment:

           i.       A device that continuously monitors pressure drop across the filtration system. Defendant MCUA shall manually record the pressure drop data once per day,

and the manually recorded data shall be maintained consistent with 40 C.F.R. § 60.758 of the Landfill NSPS.  In the event the pressure drop across the filter is measured below the EPA-approved operating parameters for fifteen (15) continuous minutes, the device will automatically trigger an alarm, which shall alert and call out appropriate personnel to respond and investigate the filtration system.  Personnel shall respond as soon as practicable to all alarm events, and in no event shall the response time be greater than five (5) hours from commencement of the alarm.

Consistent with subparagraph 16.k. of this Section, the flow of all collected landfill gas to the Treatment System shall automatically or remotely be stopped within forty-five (45) minutes of the commencement of the alarm if the event causing the alarm is not resolved or the measured deviation is not corrected within that time.  All alarm events shall be corrected as soon as practicable in order to minimize emissions, provided, however, that all collected landfill gas shall be routed to a control device that complies with 40 C.F.R. § 60.752(b)(2)(iii) within six (6) hours of the commencement of the alarm.

Complete records of the alarm event, response, and corrective measures, shall be maintained consistent with 40 C.F.R. § 60.758 of the Landfill NSPS.  To be deemed complete, the records shall at a minimum include:  the date and time of each alarm event; the date, time and nature of the response; and a description of all corrective action(s) taken to address each alarm event including the date(s) and time(s) any corrective action is initiated and the date(s) and time(s) of the follow up to confirm any Malfunction was fully corrected; and

ii.      A device that continuously monitors the minimum and maximum temperature of the landfill gas and the EPA-approved operating parameters for the de-watering system at monitoring locations specified in the design plan approved pursuant to 40 C.F.R. § 60.752(b)(2)(i)(D), or at the Treatment System(s) inlet and the chiller outlet for the de-watering

17

system.  Defendant MCUA shall manually record the temperature reduction data once per day, and the manually recorded data shall be maintained consistent with 40 C.F.R. § 60.758 of the Landfill NSPS.  In the event the temperature reduction is less than 20 degrees Fahrenheit, except as specifically provided in subparagraph 16.k. of this Section, or the reduction is outside of the operating parameters in the EPA-approved manufacturer's specifications or engineering analysis for fifteen (15) continuous minutes, the device shall automatically trigger an alarm, which shall alert and call out appropriate personnel to respond and investigate the de-watering system.  Personnel shall respond as soon as practicable to all alarm events, and in no event shall the response time be greater than five (5) hours from commencement of the alarm.

Consistent with subparagraph 16.k. of this Section, the flow of all collected landfill gas to the Treatment System shall automatically or remotely be stopped within forty-five (45) minutes of the commencement of the alarm if the event causing the alarm is not resolved or the measured deviation is not corrected within that time.  All alarm events shall be corrected as soon as practicable, in order to minimize emissions, provided, however, that all collected landfill gas shall be routed to a control device that complies with 40 C.F.R. § 60.752(b)(2)(iii) within six (6) hours of the commencement of the alarm.

Complete records of the alarm event, response, and corrective measures, shall be maintained consistent with 40 C.F.R. § 60.758 of Landfill NSPS.  To be deemed complete, the records shall at a minimum include:  the date and time of each alarm event; the date, time and nature of the response; and a description of all corrective action(s) taken to address each alarm event including the date(s) and time(s) any corrective action is initiated, and the date(s) and time(s) of the follow up to confirm any Malfunction was fully corrected; and

   iii. A device that records flow to (or from), or bypass of, the Treatment System. In order to comply with this subparagraph 16.n.iii. of this Section, Defendant MCUA shall either:

    (A) Install, calibrate, operate and maintain a volumetric gas flow rate measuring device that shall record the gas flow to (or from) the Treatment System at least every 15 minutes. Complete records of the hourly averages computed from the continuous monitoring data must also be retained; or

    (B) Secure the bypass line valve in the closed position with a car-seal or a lock-and-key type configuration. A visual inspection of the seal or closure mechanism shall be performed at least once every month to ensure that the valve is maintained in the closed position and that the gas flow is not diverted through the bypass line.

   iv. Defendant MCUA shall comply with the applicable recordkeeping and notification requirements in 40 C.F.R. § 60.7(b), (c) and (d), including the applicable provisions that pertain to the Malfunction of continuous monitoring systems or devices.

   v. Defendant MCUA shall apply for and take all necessary action to obtain a modification to its Title V operating permit to incorporate the requirements in subparagraph 16.n. of this Section into such permit.

   o. Defendant MCUA shall take all reasonable measures to minimize or avoid interference with, or damage to, the GCCS and modified GCCS installed in the Edgeboro Landfill.

17. <u>Permits</u>.

   a. Where any compliance obligation under this Section requires Defendant MCUA to obtain a federal, State, or local permit or approval, or a modification to such permit or

approval, Defendant MCUA shall submit a timely and complete application to the appropriate permitting authority and provide all other information necessary to process the application.

        b.      Within forty-five (45) days of the date of EPA's approval of the information submitted pursuant to subparagraph 16.l. of this Section, Defendant MCUA shall submit to NJDEP, with a copy to EPA, an application for a Title V permit modification pursuant to N.J.A.C. 7:27-22 *et seq.*, for the Middlesex County Landfill Title V Permit (Program Interest Number 18019), to include the provisions required to be incorporated by the terms of this Consent Decree. The Title V permit modification application will be processed in accordance with subparagraphs 17.c. and 17.d., below. The modification application will be limited to the following obligations:

        i.      All terms of the Alternative Monitoring Plan approved by EPA on July 13, 2010 and attached to this Consent Decree as Attachment A;

        ii.      Installation and quarterly inspection of markers demarcating the boundary of the Middlesex County Landfill and Edgeboro Landfill (subparagraph 16.h.);

        iii.      Treatment of collected landfill gas, and identification of the filtration, compression and de-watering systems as a Treatment System for landfill gas, specifying the operational parameters of the systems for filtration and de-watering (subparagraphs 16.k. and l.);

        iv.      Monitoring, recordkeeping and reporting requirements for the Treatment System, which will include monitoring pressure drop across the filtration system and temperature or reduction for de-watering, and flow to (or from), or bypass of, the Treatment System. (subparagraph 16.n.);

v.      The requirements of the Treatment System Startup, Shutdown and Malfunction criteria, including any amendment to Defendant MCUA's existing Startup, Shutdown and Malfunction plan; and

vi.      The reporting requirements as set forth at Section VI of this Consent Decree (Paragraph 18).

c.      The application for Title V operating permit modifications shall be submitted to the NJDEP, Division of Air Quality, Air Quality Permitting Element, Attention:

> Francis Steitz (or successor), Chief
> Bureau of Air Permits
> NJDEP
> 401 East State Street, 2nd floor
> P.O. Box 27
> Trenton, NJ 08625

NJDEP will use reasonable efforts to process the application.

d.      As to administrative completeness review, within thirty (30) days of receipt of Defendant MCUA's application for a Title V permit modification, NJDEP will determine whether it is administratively complete and will notify Defendant MCUA of any deficiencies in the application.  The NJDEP will deliver any notice of deficiency or request for additional information to MCUA by electronic and regular mail.  Defendant MCUA shall be fully responsive by providing NJDEP, within thirty (30) days of receipt of any notice of deficiency or request for additional information (unless NJDEP approves an extension), with the additional information requested by NJDEP, including any information necessary for NJDEP to make a determination that the application is administratively complete.  When NJDEP determines that the application is administratively complete, NJDEP will notify MCUA and EPA.  If NJDEP determines MCUA's permit application is administratively complete, MCUA

21

shall thereafter respond to any requests for information or Notices of Deficiency from DEP within 30 days of receipt of such requests or Notices, unless DEP approves an extension.

## VI.  REPORTING REQUIREMENTS

18.     Defendant MCUA shall submit the following reports:

a.     Within thirty (30) Days after the end of each half calendar-year (i.e., by, July 30, and January 30) after lodging of this Consent Decree, until termination of this Decree pursuant to the Termination Section, Defendant MCUA shall submit a biannual report to EPA and NJDEP for the preceding six (6) months, or such lesser period of months from the Date of Lodging to the initial half calendar-year, that shall include:

i.     the records required to be kept under subparagraph 16.f. of Section V, of all surface monitoring data and of all corrective action(s) taken;

ii.     the records required to be kept under the Landfill NSPS and MACT, of all monitoring data from monthly wellhead monitoring;

iii.     the records, reports and/or notifications required to be kept and/or submitted under subparagraphs 16.k., m. and n. of Section V, pertaining to the Treatment System.  As part of the submission of these records, Defendant MCUA shall identify and describe:

(A)     all periods of operation during which the recorded operating parameter values, including but not limited to pressure drop and temperature reduction, are outside of the EPA-approved specifications or engineering analysis that indicate compliant performance of the Treatment System, as defined in Section III of this Consent Decree (except as specifically provided in subparagraph 16.k. of Section V);

(B)     the duration of all periods when the gas stream is diverted from the Treatment System through a bypass line or the indication of a bypass flow; and

22

(C)     the duration of all periods when the Treatment System was not operating due to Startup, Shutdown (including for routine maintenance) or Malfunction; and

iv.     the status of any air permit applications regarding the MCL (including applications for permit renewal or modification).

Defendant MCUA shall apply for and take all necessary action to obtain a modification to its Title V operating permit to incorporate the Treatment System reporting requirements in subparagraph 18.a.iii. of this Section into such permit.

b.     If Defendant MCUA determines it has violated, or has reason to believe that it may violate, any requirement of this Consent Decree, including a reporting requirement, Defendant MCUA shall notify EPA and NJDEP of such determination and the likely duration of the violation, in writing, within ten (10) business days of the day Defendant MCUA first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

c.     If the cause of a violation cannot be fully explained at the time the notification under subparagraph 18.b. of this Section is due, Defendant MCUA shall so state in the notification.  In such instances, Defendant MCUA shall investigate the cause of the violation and shall then submit to EPA and NJDEP an amendment to the notification, including a full explanation of the cause of the violation, within thirty (30) days of the day Defendant MCUA becomes aware of the cause of the violation.

d.     Defendant MCUA shall submit to EPA and NJDEP with the reports required under subsection 18.a. of this Section all other records and reports required by the Landfill NSPS and MACT which are generated after the Date of Lodging until termination of this Consent Decree.  Information included in the reports and/or notifications required under this

Paragraph 18 may be used to comply with the reporting requirements in the Landfill NSPS and MACT to the extent that such information satisfies those requirements.

        e.     Nothing in this Paragraph 18 relieves Defendant MCUA of its obligation to provide the notice required by the Force Majeure Section of this Consent Decree.

19.    All reports and notifications required by this section shall be submitted to the EPA Air Compliance Branch and NJDEP, as designated in the Notice Section of this Consent Decree.

20.    Each report and notification submitted by Defendant MCUA under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

21.    The reporting requirements of this Consent Decree do not relieve Defendant MCUA of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

22.    Any information provided pursuant to this Consent Decree may be used by the United States or NJDEP in any proceeding to enforce the provisions of this Consent Decree or any violation of federal or State law and as otherwise permitted by law.

## VII.  STIPULATED PENALTIES

23.    Defendants shall be jointly liable for stipulated penalties to the United States and New Jersey for violations of this Decree as specified in Paragraph 24 below, unless excused under the Force Majeure Section of this Decree. Defendant MCUA shall be solely liable for stipulated

penalties to the United States and New Jersey for violations of this Decree as specified in Paragraphs 25 through 35, below, unless excused under the Force Majeure Section of this Decree. A violation includes any failure to perform any obligation required by the terms of this Decree, including submittal or implementation of any work plan or schedule required under this Decree.

24.   <u>Late Payment of Civil Penalty</u>. If Defendants fail to pay the civil penalty required to be paid when due, Defendants shall pay a stipulated penalty of $2,500 per Day for each Day that the payment is late.

25.   <u>Failure to Comply With Landfill NSPS and MACT Requirements Per Paragraph 15 of This Consent Decree</u>. The following stipulated penalties shall accrue per violation per day for each violation of the Landfill NSPS or MACT, which are not specifically covered by Paragraphs 26 through 33 below:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $ 1,500 | 1st through 14th Day |
| $ 3,000 | 15th through 30th Day |
| $ 6,000 | 31st Day and Beyond |

26.   <u>Failure to Comply With Landfill NSPS and MACT GCCS Requirements</u>. The following stipulated penalties shall accrue per violation per day for each violation of the requirements identified in subparagraph 16.b. of this Consent Decree, pertaining to GCCS collectors and wells:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $ 1,000 | 1st through 14th Day |

|  |  |
|---|---|
| $ 2,500 | 15th through 30th Day |
| $ 5,000 | 31st Day and Beyond |

27.     <u>Failure to Implement Surface Monitoring and/or Appropriate Corrective Action</u>.  The following stipulated penalties shall accrue per violation per day for each violation of the requirements identified in subparagraphs 16.d. and e. of this Consent Decree, pertaining to surface monitoring and corrective action(s):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 2,000 | 1st through 14th Day |
| $ 5,000 | 15th through 30th Day |
| $10,000 | 31st Day and Beyond |

28.     <u>Failure to Conduct Annual Alternative Monitoring or to Implement Alternative Corrective Action</u>.  The following stipulated penalties shall accrue per violation per day for each violation of the annual alternative monitoring requirements and/or the alternative corrective action requirements identified in Paragraphs 2 through 5 of the EPA-approved Alternative Monitoring Plan, attached as Appendix A to this Consent Decree, pertaining to annual monitoring of the liner integrity for MCL Cells 7, 8 and 9, and corrective measures in those portions of the MCL where solid waste has not been in place for five (5) years or more:

| Penalty Per Violation | Frequency of Violation |
|---|---|
| $ 1,000 | 1st through 14th Day |
| $ 2,000 | 15th through 30th Day |
| $ 3,000 | 31st Day and Beyond |

29.   <u>Failure to Implement A Program to Monitor for Cover Integrity and Implement Cover Repairs</u>.  The following stipulated penalties shall accrue per violation per day for each violation of the requirements identified in subparagraph 16.g., pertaining to cover monitoring and repairs:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,500 | 1st through 14th Day |
| $ 3,000 | 15th through 30th Day |
| $ 6,000 | 31st Day and Beyond |

30.   <u>Failure to Maintain the Physical Demarcation of the Middlesex County Landfill and Edgeboro Landfill</u>.  The following stipulated penalties shall accrue per violation per day for each violation of the requirements identified in subparagraph 16.h., pertaining to either the installation or the quarterly inspection of the physical demarcation of the Middlesex County landfill from the Edgeboro landfill:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,000 | 1st through 14th Day |
| $ 2,500 | 15th through 30th Day |
| $ 5,000 | 31st Day and Beyond |

31.   <u>Failure to Ensure that All Landfill Gas Collected by the GCCS is Treated by a Treatment System</u>.  The following stipulated penalties shall accrue per violation per day for each violation of the requirements identified in subparagraphs 16.k., m. and n., pertaining to the treatment of landfill gas collected by Defendant MCUA's GCCS, which are not covered by Paragraphs 32, 33 and 35 below:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,500 | 1st through 14th Day |
| $ 3,000 | 15th through 30th Day |
| $ 6,000 | 31st Day and Beyond |

32.   Recordkeeping Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the recordkeeping requirements identified in subparagraphs 16.f., k. and n. of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,000 | 1st through 14th Day |
| $ 2,500 | 15th through 30th Day |
| $ 5,000 | 31st Day and Beyond |

33.   Failure to Make Required Submittals.  The following stipulated penalties shall accrue per violation per day for each violation of the requirements identified in subparagraphs 16.c. and l., pertaining to the submittal of required information:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,000 | 1st through 14th Day |
| $ 2,500 | 15th through 30th Day |
| $ 5,000 | 31st Day and Beyond |

34.   Failure to Comply with Permit Application Requirements.  The following stipulated penalties shall accrue per violation per day for each violation of the requirements identified in subparagraphs 17.b. and 17.d. of this Consent Decree, pertaining to failure to submit a Title V permit modification application to NJDEP, and/or to respond to any Notice of Deficiency or

request for additional information from NJDEP within 30 days of receipt of such requests or Notices, or within any extension of the 30 days approved by NJDEP:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,500 | 1st through 14th Day |
| $ 3,000 | 15th through 30th Day |
| $ 6,000 | 31st Day and Beyond |

35.    Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,000 | 1st through 14th Day |
| $ 2,500 | 15th through 30th Day |
| $ 5,000 | 31st Day and Beyond |

36.    Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

37.    Defendant(s) shall pay stipulated penalties to the United States and the State within thirty (30) days of a written demand by either Plaintiff.  Such Defendant(s) shall pay 50 percent of the total stipulated penalty amount due to the United States and 50 percent to the State.  The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

38.    The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.  The State may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

39.    Stipulated penalties shall continue to accrue during any Dispute Resolution, but need not be paid until the following:

    a.    If the dispute is resolved by agreement or by a decision of the Plaintiffs, that is not appealed to the Court, the relevant Defendant shall pay accrued penalties determined to be owing, together with interest at the rate specified in 28 U.S.C. § 1961, to the United States and/or New Jersey, as applicable, within 30 Days of the Effective Date of the agreement or the receipt of such decision.

    b.    If the dispute is appealed to the Court and the United States or New Jersey prevails in whole or in part, the relevant Defendant shall pay all accrued penalties determined by the Court to be owed, together with interest thereon, within sixty (60) days of receiving the Court's decision or order, except as provided in subparagraph c., below.

    c.    If any relevant Defendant, the United States, or New Jersey appeals the District Court's decision, the relevant Defendant shall pay all accrued penalties determined to be owed, together with interest, within fifteen (15) days of receiving the final appellate court decision.

40.    A Defendant shall pay stipulated penalties owing to the United States and/or New Jersey, as appropriate, in the manner set forth and with the confirmation notices required by the Civil Penalty Section of this Decree, and the transmittal letter shall state that the payment is for stipulated penalties and indicate the violation(s) for which the penalties are being paid.

41.     If a Defendant fails to pay stipulated penalties in accordance with the terms of this Consent Decree, such Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or New Jersey from seeking any remedy otherwise provided by law for a Defendant's failure to pay any stipulated penalties.

42.     Subject to the provisions of the Effect of Settlement/Reservation of Rights Section of this Consent Decree, the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or New Jersey for a Defendant's violation of this Consent Decree or applicable law.  Defendants shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation(s).

## VIII.  FORCE MAJEURE

43.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of a Defendant or of any entity controlled by a Defendant, which delays or prevents the performance of any obligation under this Consent Decree despite the Defendant's best efforts to fulfill the obligation.  The requirement that a Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include a Defendant's financial inability to perform any obligation under this Consent Decree or an increase in costs.

44.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Defendant claiming Force Majeure shall provide notice orally or by electronic or facsimile transmission to

EPA and the State within 72 hours of when the Defendant first knew that the event might cause a delay. Within seven (7) days thereafter, the Defendant shall provide in writing to EPA and the State, an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of the Defendant, such event may cause or contribute to an endangerment to public health, safety, welfare or the environment. The Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure event. Failure to comply with the above requirements shall preclude the Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. The Defendant shall be deemed to know of any circumstance of which the Defendant, any entity controlled by Defendant, or Defendant's contractor(s) knew or should have known.

45.    If EPA and the State agree that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by them for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA and the State will notify the relevant Defendant(s) in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

46.     If EPA and the State do not agree that the delay or anticipated delay has been or will be caused by a force majeure event, they will notify the relevant Defendant in writing of its decision.

47.     If the Defendant elects to invoke the dispute resolution procedures set forth in the Dispute Resolution Section, it shall do so no later than 10 days after receipt of Plaintiffs' notice. In any such proceeding, the disputing Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of this Section. If Defendant meets this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the State

## IX.  DISPUTE RESOLUTION

48.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. A Defendant's failure to seek resolution of a dispute under this Section shall preclude that Defendant from raising any such issue as a defense to an action by the United States or New Jersey to enforce any obligation of the Defendant arising under this Decree.

49.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when a Defendant sends EPA and the State a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed thirty (30) days from the date the dispute arises, unless that period

is modified by written agreement.  If after this period the Parties cannot resolve a dispute by informal negotiations, then the position advanced by EPA and the State shall be considered binding unless, within thirty (30) days after the conclusion of the informal negotiation period, the disputing Defendant invokes formal dispute resolution procedures as set forth below.

50.     Formal Dispute Resolution.  A Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on EPA and the State a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by the disputing Defendant.

51.     EPA and the State shall serve a Statement of Position within forty-five (45) days of receipt of Defendant's Statement of Position.  The Plaintiffs' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the Plaintiffs.  The Plaintiffs' Statement of Position shall be binding on the disputing Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

52.     The disputing Defendant may seek judicial review of the dispute by filing with the Court and serving on EPA and the State, in accordance with the Notices Section of this Consent Decree, a motion requesting judicial resolution of the dispute.  The motion must be filed within twenty (20) days of receipt of the Plaintiffs' Statement of Position pursuant to the preceding Paragraph and the Local Rules of This Court.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested.

53.    EPA and the State shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

54.    <u>Standard of Review</u>.

     a.    <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA and/or New Jersey under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, the disputing Defendant shall have the burden of demonstrating, based on the administrative record, that the position of EPA and the State is not in accordance with this Consent Decree and the law.

     b.    <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, including subparagraph (a) above, the disputing Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree.

55.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of any Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute.  If a disputing Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in the Stipulated Penalties Section.

## X. INFORMATION COLLECTION AND RETENTION

56.     The United States, New Jersey and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

      a.     monitor the progress of activities required under this Consent Decree;

      b.     verify any data or information submitted to the United States or New Jersey in accordance with the terms of this Consent Decree;

      c.     monitor any emissions or operational parameters and review any records;

      d.     obtain documentary evidence, including photographs and similar data; and

      e.     assess Defendant MCUA's compliance with this Consent Decree.

57.     Until five (5) years after the termination of this Consent Decree, Defendant MCUA shall retain, and shall instruct its contractors and agents to preserve, legible copies (both identical and non-identical versions) of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, developed or collected by Defendant MCUA or its contractor, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant MCUA's performance of their obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States or New Jersey, Defendant MCUA shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

58.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant MCUA shall notify the United States and New Jersey at least ninety (90) days prior to the destruction of any documents, records, or other information subject to the

requirements of the preceding Paragraph and, upon written request by the United States or New Jersey received within said ninety (90) day period, Defendant MCUA shall deliver any such documents, records, or other information to EPA or New Jersey. Defendant MCUA may assert that certain documents, records, or other information is privileged under the attorney-client privilege, the work product doctrine or any other privilege recognized by federal law. If Defendant MCUA asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant MCUA.

59.     A Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that a Defendant seeks to protect as CBI, the Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

60.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or New Jersey pursuant to applicable federal or state law, regulation, or permit, nor does it limit or affect any duty or obligation of a Defendant to maintain documents, records, or other information imposed by applicable federal or State laws, regulations, or permits.

## XI.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

61.     This Consent Decree resolves the civil and/or administrative claims of the United States and New Jersey, for the violations alleged (i) in the Complaint filed in this action and in the Finding of Violation issued on February 9, 2007 and the Finding of Violation issued on

January 10, 2007, through the Date of Lodging of this Decree, and (ii) against Defendant MCUA as identified in Attachment B to this Consent Decree.

62.    The United States and New Jersey reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 61, above. This Consent Decree shall not be construed to limit the rights of the United States or New Jersey to obtain penalties or injunctive relief under the Act or implementing regulations, the Air Pollution Control Act or implementing regulations, or under other federal or state law, regulation, or permit condition, except as expressly specified in Paragraph 61, above.

63.    In any subsequent administrative or judicial proceeding initiated by the United States or New Jersey for injunctive relief, civil penalties, other appropriate relief relating to the MCL or Defendants' alleged violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or New Jersey in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 61 of this Section.

64.    Nothing in this Consent Decree shall be construed to limit the authority of the United States or New Jersey to undertake any action against any person, including the Defendants, to abate, prevent or correct conditions which are or may be contrary to public health, safety, welfare or the environment.

65.    Nothing in this Consent Decree shall preclude EPA or NJDEP from taking enforcement action against the Defendants for violations of the law not resolved by this Consent Decree.

66.   Nothing in this Consent Decree shall be construed as a waiver of any statutory or common law right of New Jersey nor shall this Consent Decree be considered a waiver of any claims for any natural resources damages or compensation.

67.   This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant MCUA is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, rules and permits; and Defendant MCUA's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, rules or permits, except as set forth herein.  The United States and New Jersey do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant MCUA's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, or with any other provisions of federal, State, or local laws, regulations, rules or permits.

68.   This Consent Decree does not limit or affect the rights of Defendants or of the United States or New Jersey against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against a Defendant, except as otherwise provided by law.

69.   This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.  COSTS

70.   The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and New Jersey shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by a Defendant.

XIII.  NOTICES

71.    Unless otherwise specified herein, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

       To the United States:

       Chief, Environmental Enforcement Section
       Environment and Natural Resources Division
       U.S. Department of Justice
       Box 7611 Ben Franklin Station
       Washington, D.C.  20044-7611
       Re:  DOJ No. 90-5-2-1-09328

       To EPA:

       Kenneth Eng
       Chief, Air Compliance Branch
       U.S. Environmental Protection Agency, Region 2
       290 Broadway, Floor 21
       New York, New York 10007

       And

       Flaire Hope Mills
       Chief, Air Branch
       U.S. Environmental Protection Agency, Region 2
       290 Broadway, Floor 16
       New York, New York  10007

       To New Jersey:

       Ed Choromanski
       Manager, Air Compliance & Enforcement
       Administrator, Air Compliance & Enforcement
       New Jersey Department of Environmental Protection
       P.O. Box 422
       Trenton, New Jersey  08625-0422

       And

       Kevin P. Auerbacher, DAG
       Chief, Environmental Enforcement & Homeland Security Section
       New Jersey Division of Law

25 Market Street, 7th Floor, West Wing
P.O. Box 093
Trenton, New Jersey 08625-0093

To Defendant NERC Middlesex Gas Co. and Middlesex Generating Co.:

Thomas Murphy, Vice President
PurEnergy Management Services LLC
1732 Genesee Street
Syracuse, New York 13204

And

Ellen Radow Sadat, Esq.
Drinker Biddle & Reath LLP
105 College Road East
P.O. Box 627
Princeton, New Jersey 08642-0627

To Defendant Middlesex County Utilities Authority:

Richard L. Fitamant, Executive Director
Middlesex County Utilities Authority
2571 Main Street Extension
P.O. Box 159
Sayreville, NJ 08872-0159

And

John A. Hoffman, Esq.
Wilentz, Goldman & Spitzer P.A.
90 Woodbridge Center Drive
Woodbridge, New Jersey 07095

72.     Any Party may, by written notice to the other Parties, change its designated notice
recipient or notice address provided above.

73.     Unless otherwise provided herein, notifications or communications with the United
States, EPA, or NJDEP that are required under this Consent Decree will be deemed submitted on
the date they are postmarked and sent either by overnight delivery or by certified or registered
mail, return receipt requested.

## XIV.  EFFECTIVE DATE

74.     The Effective Date of this Consent Decree shall be the date upon which this Consent

Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever

occurs first, as recorded on the Court's docket.

## XV.  RETENTION OF JURISDICTION

75.     The Court shall retain jurisdiction over this case until termination of this Consent Decree,

for the purpose of resolving disputes arising under this Decree or entering orders modifying this

Decree, pursuant to the Dispute Resolution or Modification Sections of this Decree, or

effectuating or enforcing compliance with the terms of this Decree.

## XVI.  MODIFICATION

76.     The terms of this Consent Decree, including any attached appendices, may be modified

only by a subsequent written agreement signed by all the Parties.  Where the modification

constitutes a material change to this Decree, it shall be effective only upon approval by the

Court.

77.     Any disputes concerning modification of this Decree shall be resolved pursuant to the

Dispute Resolution Section of this Decree, provided, however, that, instead of the burden of

proof provided by the Dispute Resolution Section of this Decree, the Party seeking the

modification bears the burden of demonstrating that it is entitled to the requested modification in

accordance with Federal Rule of Civil Procedure 60(b).

## XVII.  TERMINATION

78.     After Defendant MCUA (1) has satisfied all provisions in Section V of this Consent

Decree (Compliance Requirements), Section VI of this Decree (Reporting Requirements),

Section VII of this Decree (Stipulated Penalties); (2) has submitted an administratively complete

Title V permit modification application and obtained a Title V permit modification approval

42

from NJDEP in accordance with this Decree; (3) has maintained satisfactory compliance with the requirements of this Decree for at least a two year period from the Effective Date; and (4) the Defendants have paid the civil penalty and any accrued stipulated penalties as required by this Decree, Defendant MCUA may serve upon EPA and the State a Request for Termination, stating that Defendant MCUA has substantially satisfied the requirements of this Consent Decree, together with all necessary supporting documentation.

79.     After Defendants NERC, and MGC, and MCUA have paid the Civil Penalty and any accrued stipulated penalties related to the Civil Penalty as required by this Consent Decree, Defendants NERC and MGC may serve upon EPA and the State a request for termination, stating that Defendants NERC and MGC have satisfied those requirements, together with all necessary supporting documentation.

80.     Following receipt by the United States and New Jersey of a Defendant's Request for Termination, the United States, New Jersey, and the requesting Defendant shall confer informally within thirty (30) days concerning the Request and any disagreement that they may have as to whether that Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the Plaintiffs agree that the Decree may be terminated as to that Defendant, the Plaintiff and that Defendant shall submit within thirty (30) days, for the Court's approval, a joint stipulation terminating the Decree as to that Defendant.

81.     If the Plaintiffs do not agree that the Decree may be terminated as to a Defendant, that Defendant may invoke Dispute Resolution under this Decree, but not until ninety (90) days after service of its Request for Termination.

## XVIII. PUBLIC PARTICIPATION

82.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States

and New Jersey reserve the right to withdraw or withhold their consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendants consent to entry of this Consent Decree without further notice and agree not to oppose entry of this Consent Decree, or to withdraw from this Consent Decree, unless the United States or New Jersey has notified Defendants in writing that they no longer support entry of the Decree.

## XIX. SIGNATORIES/SERVICE

83.     Each undersigned representative of Defendants, the State of New Jersey, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

84.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XX. INTEGRATION

85.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXI.  FINAL JUDGMENT

86.     Upon the Effective Date of this Consent Decree, it shall constitute an enforceable

judgment for purposes of post-judgment collection in accordance with Rule 69 of the Federal

Rules of Civil Procedure, the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3001 3308,

and other applicable federal authority.  The United States and NJDEP shall each be deemed a

judgment creditor for purposes of collection of any unpaid amounts of the civil and stipulated

penalties and interest.

87.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall

constitute a final judgment of the Court as to the United States, New Jersey, and Defendants.


Dated and entered this 22ᴺᴰ day of November, 2010.


_____

UNITED STATES DISTRICT JUDGE
District of New Jersey

FOR PLAINTIFF UNITED STATES OF AMERICA:


Date: 8/2/10

ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources Division



Date: 8/9/10

JEROME W. MACLAUGHLIN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC  20044-7611
(202) 616-7162

FOR THE ENVIRONMENTAL PROTECTION AGENCY:


Date: 8/5/10

JUDITH A. ENCK
Regional Administrator
United States Environmental Protection Agency
Region 2
290 Broadway
New York, New York  10007


Date: 7/15/10

ERIC SCHAAF
Regional Counsel
United States Environmental Protection Agency
Region 2
290 Broadway
New York, New York  10007


Date: July 15, 2010

Erick R. Ihlenburg
Assistant Regional Counsel
United States Environmental Protection Agency
Region 2
290 Broadway
New York, New York  10007

FOR THE STATE OF NEW JERSEY:

Wolfgang Skacel
Assistant Commissioner
New Jersey Department of Environmental Protection

Date: July 22, 2010

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
By: Bruce A. Velzy, Deputy Attorney General

Date: 7-26-10

FOR DEFENDANTS NERC MIDDLESEX GAS CO., LLC, AND
MIDDLESEX GENERATING CO., LLC:


Thomas Murphy
Vice President
PurEnergy Management Services, LLC
as Manager of NERC Middlesex Gas Co., LLC

Date: 7/13/10


Thomas Murphy
Vice President
PurEnergy Management Services, LLC
as Manager of Middlesex Generating Co., LLC

Date: 7/13/10


Drinker Biddle & Reath, LLP
By: Ellen Radow Sadat, Esq.

Date: 7/14/10

49

FOR DEFENDANT MIDDLESEX COUNTY UTILITIES AUTHORITY:

Date:   7-2-10

Richard L. Fitamant
Executive Director
Middlesex County Utilities Authority

Date:   7-13-10

Wilentz, Goldman & Spitzer
By: John A. Hoffman, Esq.

United States et al. v. Middlesex County Utility Auth., et al.

ATTACHMENT A



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 2
290 BROADWAY
NEW YORK, NY 10007-1866

JUL 1 3 2010

<u>CERTIFIED MAIL - RETURN RECEIPT REQUESTED</u>

Richard L. Fitamant, P.E.
Executive Director
Middlesex County Utilities Authority
53 Edgeboro Road
East Brunswick, New Jersey 08816

Re:    Middlesex County Utilities Authority—
       Interim Alternative Monitoring Plan for Cells 7, 8 and 9 of the Middlesex County
       Landfill, East Brunswick, New Jersey

Dear Mr. Fitamant:

This letter is to inform you of the United States Environmental Protection Agency's
(EPA) approval of an interim alternative monitoring plan for Cells 7, 8 and 9 of the
Middlesex County Landfill (MCL), located in East Brunswick Township, Middlesex
County, New Jersey. [1]  The Middlesex County Utilities Authority (MCUA) proposed the
interim alternative monitoring plan to EPA on February 3, 2010.  EPA's approval is
given under the authority of 40 C.F.R. § 60.752(b)(2).

The approved interim alternative monitoring requirements set forth below will remain in
effect on a cell-by-cell basis, until the date that the first waste deposited in a given cell
has been in place for five (5) years.  The specific terms of the interim alternative
monitoring plan are approved by EPA as follows:

1.    This approved interim alternative monitoring plan describes the alternative
surface monitoring measures that MCUA will perform, with respect to the MCL

---

[1]  Nothing in this interim alternative monitoring approval shall be construed as a determination that the
MCL and Edgeboro Landfill areas are or are not a single source of air emissions or that they are or are not a
single landfill.

impermeable landfill liner, in all portions of the MCL where solid waste has not been in place for five (5) years or more.

2.  MCUA shall perform alternative surface monitoring of the MCL impermeable liner as described in Paragraphs 3, 4, and 5 of this approval, once per year, in all portions of the MCL where solid waste has not been in place for five (5) years or more (i.e., Cells 7, 8 and 9 of the MCL). Such annual alternative monitoring of the landfill liner shall commence on or before August 1, 2010, and shall commence on or before August 1st of each subsequent year that this interim alternative monitoring plan is in effect for each cell.

3.  In those portions of the MCL where no solid waste has been placed, where a layer of Posi-Shell has been placed to stabilize the sand burden overlying the liner system, and where electronic testing of the top layer of the liner system is viable, MCUA shall perform a leak integrity test of the top layer of the liner system per ASTM D-6747-04 (Standard Guide for Selection of Techniques for Electrical Detection of Potential Leak Paths in Geomembrane) per Paragraph 2 of this approval. For purposes of this Paragraph, such electronic testing is viable if it can be conducted consistent with ASTM D-6747-04. Within ten (10) days of detecting any leak using this test, the overlying sand burden will be excavated to expose the top layer of the liner system and the liner will be repaired as needed to re-establish its integrity. No additional monitoring will be performed until the next scheduled annual test.

4.  In those portions of the MCL where no solid waste has been placed, but where electronic testing of the top layer of the liner system is not viable, MCUA shall perform surface emission monitoring for methane per Paragraph 2 of this approval. For purposes of this Paragraph, such electronic testing is not viable if it cannot be conducted consistent with ASTM D-6747-04. This monitoring will follow the requirements in 40 C.F.R. § 60.755(c)(2) – (c)(3) and 40 C.F.R. § 60.755(d), using a pattern that traverses the designated area at 30 meter intervals. Within ten (10) days of measuring a methane concentration greater than 500 parts per million (ppm) above background, the overlying sand burden will be excavated to expose the top layer of the liner system. The exposed layer of the liner system will be visually inspected for loss of integrity and it will be repaired as needed to re-establish its integrity. No additional monitoring will be performed until the next scheduled annual test. Any methane concentration greater than 500 ppm above background shall not be considered a violation of the operational standard at 40 C.F.R. § 60.753(d) if the corrective action described in this paragraph is timely and properly undertaken. Areas with steep slopes or other dangerous areas may be excluded from the surface testing, in accordance with 40 C.F.R. § 60.753(d).

5.  In those portions of the MCL where solid waste has been in place for less than five (5) years, MCUA shall perform surface emission monitoring for methane per Paragraph 2 of this approval. This monitoring will follow the requirements in 40 C.F.R. § 60.755(c)(2) – (c)(3) and 40 C.F.R. § 60.755(d) using a pattern that traverses the designated area at 30 meter intervals. Within ten (10) days of measuring a methane

concentration greater than 500 parts per million (ppm) above background, corrective action will be initiated and will be limited to the use of best management practices and cover maintenance.

If interim landfill gas collection devices are in operation, additional corrective action may include adjustment of the collection devices' vacuum. No additional monitoring will be performed until the next scheduled annual test. Any methane concentration greater than 500 ppm above background shall not be considered a violation of the operational standard at 40 C.F.R. § 60.753(d) if the corrective action described in this paragraph is timely and properly undertaken. Areas with steep slopes or other dangerous areas may be excluded from the surface testing, in accordance with 40 C.F.R. § 60.753(d).

6.      MCUA shall maintain records of all annual monitoring events and corrective measures taken pursuant to Paragraphs 3, 4 and 5 of this approval. Records will include the date, location and description of all monitoring activities and a description of all corrective measures.

7.      MCUA shall report all alternative monitoring and corrective action activities for the prior calendar year annually, with the submission of the January report to NJDEP and EPA, commencing January 30, 2011

EPA retains full authority to enforce the requirements of the Clean Air Act, as amended, 42 U.S.C. § 7401 et seq., and nothing in this approval shall limit that authority. If you have any additional questions regarding this matter, please contact Johnny Chiang of my staff at (212) 637-4048 or chiang.johnny@epa.gov, or Erick Ihlenburg, Assistant Regional Counsel, at (212) 637-3250 or ihlenburg.erick@epa.gov.

Sincerely,

Kenneth Eng, Chief
Air Compliance Branch
Division of Enforcement and Compliance Assistance
U.S. Environmental Protection Agency – Region 2

3

cc:     Barbara Koonz, Esq.
        Wilentz, Goldman & Spitzer P.A.
        90 Woodbridge Center Drive
        Suite 900 Box 10
        Woodbridge, NJ  07095

        Edward Choromanski
        Administrator
        NJDEP Air Compliance & Enforcement
        PO Box 422
        401 East State Street
        4th Floor East
        Trenton, NJ  08625-0422

        Patricia Conti
        NJDEP Air Compliance & Enforcement
        Central Region
        PO Box 407
        300 Horizon Center
        Robbinsville, NJ  08625-0407

        Robert Confer
        NJDEP Bureau of Landfill and Hazardous Waste Permitting
        Solid and Hazardous Waste Management Program
        PO Box 414
        401 East State Street
        Trenton, NJ  08625-0414

4